IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CATHY LYNN HOWARD,** | Case No. 4:17 CV 1556 |
| Plaintiff, | Chief Judge Patricia A. Gaughan |
| v. | Magistrate Judge James R. Knepp, II |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | REPORT AND RECOMMENDATION |

## INTRODUCTION

Plaintiff Cathy Lynn Howard ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny supplemental security income ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated July 28, 2017). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB in February 2014, alleging a disability onset date of September 7, 2010. (Tr. 201-04). Her claims were denied initially and upon reconsideration. (Tr. 100-32). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 156-57). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on February 23, 2016. (Tr. 60-99). On March 17, 2016, the ALJ found Plaintiff not disabled in a written decision. (Tr. 42-54). The Appeals Council denied Plaintiff's request for review,

making the hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff timely filed the instant action on July 28, 2016. (Doc. 1).

## FACTUAL BACKGROUND[1]

Personal Background

Plaintiff was born in May 1969, and was 45 years old on her date last insured. (Tr. 53). She had past work as a loan clerk, auto salesperson, and lot manager. *Id.*

Relevant Medical Evidence

*From Alleged Onset Date through Date Last Insured*

On September 8, 2010, Plaintiff underwent surgery on her right knee for a meniscectomy to remove a torn portion of meniscus in her knee. (Tr. 375, 384-85, 392-93). She subsequently underwent a right knee arthroplasty in March 2011. (Tr. 47, 591). At a May 2011 physical therapy appointment, Plaintiff had "improving gait and tolerance to steps and mini squats. (Tr. 977).

In November 2011, Plaintiff underwent a right knee arthroscopy with synovectomy and cortisone injection. (Tr. 465). Robert Piston, M.D., performed this surgery. *Id.* At a physical therapy appointment in late December 2011, Plaintiff reported an "easier time walking but standing for longer than 10 minutes really bother[ed] [her]". (Tr. 1010).

---

1. In her brief, Plaintiff challenges only the ALJ's consideration of her left knee impairment, her ability to stand, and the VE testimony. As such, the undersigned summarizes only the medical evidence relevant to these claims. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issued not raised in opening brief waived). Further, pursuant to this Court's initial order, "**[a]ll facts relevant to the legal issues and discussion must be set forth in the "Facts" section**" and "**[a]ny factual assertions or arguments relying upon the record that either do not cite to the record or are unsupported by the record citation will not be considered by the Court.**" (Doc. 6, at 3) (emphasis in original). Plaintiff's brief does not contain a facts section, but cites approximately a dozen transcript pages. *See* Doc. 9 (citing Tr. 21, 24, 46, 50, 73, 97, 384, 393, 608, 1859). Thus, the undersigned only considers those portions of the record cited by the parties.

2

In January 2012, Plaintiff reported increased pain in both knees from spending "the last 2 days in the kitchen cooking." (Tr. 940). Plaintiff completed several physical therapy exercises including a ten minute stationary bicycle warm-up. *Id.*

The next month, Plaintiff underwent a left knee arthroscopy with a partial medial meniscectomy as well as injections into the left knee. (Tr. 484). Dr. Piston performed the procedure. *Id.* Later that same month, Plaintiff reported she had been "feeling pretty good" over the weekend and "was able to do laundry and other chores around the house." (Tr. 911). At the appointment, however, both knees were "stiff and sore" and she experienced right knee buckling. *Id.*

March 2012 x-rays of Plaintiff's right knee showed "good positioning and alignment of the prosthesis" with "no evidence of loosening." (Tr. 908).

In June 2012, Dr. Piston noted Plaintiff was "status-post a left knee arthroscopy from 02-01-12" and "[t]he left knee continues to do well." (Tr. 1414). Her "right total knee with the subsequent knee scope on 11/02/11 continue[d] to be painful" and she had "significant pain in her right knee." *Id.* He advised Plaintiff to wear a brace, prescribed pain medication, moist heat, and massage. *Id.* He also wrote "a new request for physical therapy." *Id.*

In September 2012, Plaintiff underwent a right knee arthrotomy with complete synovectomy, with resection heterotopic bone, and excision of a prior surgical scar. (Tr. 517, 607-09).

In January 2013, Dr. Piston noted Plaintiff was four months post-op. (Tr. 793). Plaintiff reported moderate, persistent pain ("tolerable due to [sic] early in the day, but increases as the day progresses"), for which she took Tylenol. *Id.* She had been out of therapy for four weeks and was "100 percent weightbearing." *Id.* On exam, Dr. Piston noted joint pain, stiffness, and mild swelling

3

in the right knee. (Tr. 794). Plaintiff's incision was well-healed, and she had no muscle atrophy or weakness. *Id.*

At a follow-up appointment in February 2013, Plaintiff reported worsening right knee pain, aggravated by movement, for which she was taking Tylenol and Vicodin. (Tr. 824). Dr. Piston again noted joint tenderness and swelling in Plaintiff's right knee, but no muscle weakness or atrophy. (Tr. 825). X-rays showed orosthetic components "to be in excellent alignment and positioning with no evidence of any loosening or osteolysis." There was also "no evidence of any recurrence of heterotopic bone growth since her last surgery." (Tr. 826). Dr. Piston recommended continued physical therapy. *Id.*

In July 2013, Plaintiff reported continued right knee pain to Dr. Piston. (Tr. 1218). On exam, Dr. Piston noted right knee joint pain, stiffness, and swelling. (Tr. 1219-20). Dr. Piston performed an injection. (Tr. 1220).

In January 2014, Plaintiff reported a right knee injury due to a fall caused by her knee buckling. (Tr. 1183). She went to the hospital for stitches. *Id.* On exam, Dr. Piston again noted joint pain, stiffness, and swelling in Plaintiff's right knee, but no muscle atrophy or weakness. (Tr. 1184). He noted Plaintiff was not using an assistive device. (Tr. 1183). An x-ray of the right knee showed "good position and alignment of the total knee prosthesis" and "[n]o evidence of loosening." (Tr. 1185).

In September 2014, Plaintiff underwent an independent medical examination with Richard Kaplan, M.D. related to her workers' compensation case. (Tr. 1679-83). Plaintiff reported no upper extremity symptoms, but "significant lower extremity pain status post arthroscopy of the left lower extremity for her compensatory gait." (Tr. 1680). She told Dr. Kaplan she used a cane daily, her son helped her with cleaning/house work, and she found it difficult to carry things up and down

the stairs. *Id.* On examination, Dr. Kaplan found "severe tenderness in the right knee, especially over the medial and lateral joint lines." (Tr. 1681). Her gait was mildly antalgic with a cane and orthosis. *Id.* She had a limited range of motion (between 55 and 85 degrees) due to pain. *Id.* Her left leg range of motion and strength were within normal limits. *Id.*

Plaintiff saw Dr. Piston in December 2014. (Tr. 1862-65). On examination, Dr. Piston noted right knee tenderness, swelling, and limited range of motion. (Tr. 1864). Plaintiff reported she thought her medication was no longer effective, and was interested in further surgical intervention. (Tr. 1865). X-rays again showed "prosthesis in good position with no evidence of loosening or wear" and "no fracture, dislocation or pathology noted." *Id.*

*Opinion Evidence*

In July 2013, Dr. Piston opined Plaintiff could perform sedentary work, but would need to "change sitting positions frequently, typically every 20 minutes", due to her pain level. (Tr. 1220).

In May 2014, state agency physician Steve McKee, M.D., reviewed Plaintiff's records. (Tr. 105-10). He opined Plaintiff could lift and carry ten pounds frequently; stand or walk for a total of four hours in an eight-hour workday; and sit for six hours in an eight-hour workday. (Tr. 109). He noted she used a cane "most of the time" but "can carry up to 10 pounds in the other hand" and would need the cane for uneven surfaces. *Id.* Dr. McKee also noted Plaintiff "must periodically sit and stand but this can be accommodated by normal breaks and lunch." *Id.* She could frequently climb ramps/stairs, and balance. *Id.* She could occasionally climb ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl. (Tr. 109-10). Finally, Dr. McKee opined Plaintiff should avoid dangerous machinery and unprotected heights. (Tr. 110).

At the September 2014 independent medical examination, Dr. Kaplan offered an opinion on Plaintiff's functional capacity. (Tr. 1681-82). He opined Plaintiff had reached maximum

medical improvement and further curative treatment was not likely to be effective. (Tr. 1681). He opined Plaintiff could stand or walk for fifteen minutes continuously or one hour cumulatively per day; lift or carry five pounds frequently or ten pounds occasionally, and sit on an unrestricted basis "with the ability to change positions for 1 minute each hour." (Tr. 1681-82). He opined Plaintiff should not kneel, squat, bend, twist, climb, or work at heights. *Id.* "The supportive rationale for this opinion is an antalgic gait given extensive complications of internal derangement of the right knee." (Tr. 1682).

In October 2014, state agency physician Bradley Lewis, M.D., reviewed Plaintiff's records. (Tr. 120-27). He opined Plaintiff could lift twenty pounds occasionally, and ten pounds frequently. (Tr. 125). She could stand or walk for four hours, and sit for six, in an eight-hour workday. (Tr. 125). He offered noted identical cane usage restrictions to Dr. McKee. (Tr. 125-26). Plaintiff could never climb ladders/ropes/scaffolds, but could frequently balance. (Tr. 126). She could occasionally climb ramps/stairs, stoop, kneel, crouch, or crawl. *Id.* He similarly opined that Plaintiff should avoid dangerous machinery and unprotected heights. (Tr. 127). By way of additional explanation, he noted a June 2014 examination in which Plaintiff had an antalgic gait with use of a cane, a stable right knee to varus and valgus stress, full passive extension, intact motor function, normal sensation, and flexion limited to 75 to 80 degrees. *Id.*

*After Date Last Insured*[2]

In August 2015, Plaintiff underwent a right knee revision surgery (arthrotomy, synovectomy, excision scar tissue, excision heterotopic bone). (Tr. 1920-21, 1859-61). At a follow up visit in November, Plaintiff reported continued pain, but was "100 percent weightbearing. (Tr.

---

2. Plaintiff's insured status expired on December 31, 2014. *See* Tr. 206.

1920). On exam, Dr. Piston noted tenderness and swelling in Plaintiff's right knee, and recommended she attend physical therapy three times a week if possible. (Tr. 1922).

In March 2016, Plaintiff underwent an MRI of her left knee. (Tr. 21-22). It showed "[m]oderate degenerative chondrosis changes medial patellar facet undersurface and mild to moderate small focal area of medial joint compartment medial femoral condyle." (Tr. 22).

Plaintiff saw Dr. Piston after her MRI. (Tr. 24). She reported gradual onset knee pain that "has been occurring in an intermittent (left. Hurts only with use-severe. Right is constant and worse with use) pattern for years." *Id.* Dr. Piston's impression was "patient to attend physical therapy once a week with no physical therapy needed on the left knee." (Tr. 28).

VE Testimony

A VE appeared and testified at the ALJ hearing. (Tr. 93-98). The ALJ asked the VE to consider an individual with Plaintiff's age, education, background, and past work, who was ultimately limited in the way found by the ALJ. (Tr. 95-97). The hypothetical question included identical wording to the ALJ's RFC regarding "chang[ing] positions between sitting and standing three times per hour being momentarily off task while doing so". *Compare* Tr. 46 *with* Tr. 95-96. The VE responded that such an individual could perform jobs such as touch-up screener, table worker, and document preparer. (Tr. 96-97). Neither the VE, nor Plaintiff's counsel, asked for clarification regarding any term included in the hypothetical question. *See* Tr. 93-98.

ALJ Decision

In his written decision, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2014, and had not engaged in substantial gainful activity from her alleged onset date through her date last insured. (Tr. 44)."Through the date last insured", Plaintiff had severe impairments of obesity, osteoarthrosis of the right knee, hypertension,

7

affective disorder, status post right knee arthroplasty, and multiple related surgeries and degenerative disc disease of the lumbar spine. *Id.* These impairments, individually or in combination, did not meet or medically equal a listed impairment. *Id.* The ALJ then concluded Plaintiff retained the residual functional capacity:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant could lift/carry 10 pounds occasionally and less than 10 pounds frequently; she could change positions between sitting and standing 3 times per hour being momentarily off task while doing so. She could occasionally climb ramps and stairs, no ladders and scaffolds, occasionally balance, frequently stoop, occasionally kneel, occasionally crouch and never crawl. No unprotected heights or moving mechanical parts, and occasional operation of a motor vehicle, and she is limited to performing simple routine tasks.

(Tr. 46). The ALJ found Plaintiff could not perform her past relevant work, but considering her age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (Tr. 53). Therefore, the ALJ concluded Plaintiff was not disabled from her alleged onset date (September 7, 2010) through her date last insured (December 31, 2014). (Tr. 54).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or

8

indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.*

Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff appears to assert as error: 1) the ALJ's failure to find her left knee impairment was severe; 2) the ALJ's assessment of Dr. Kaplan's opinion; and 3) the ALJ's questioning of the VE. *See* Docs. 9, 13. The Commissioner contends: 1) Plaintiff's arguments are underdeveloped and should be deemed waived; or alternatively 2) the ALJ did not err and his decision is supported by substantial evidence. For the reasons discussed below, the undersigned recommends the decision be affirmed.

Waiver

Preliminarily, the Commissioner asserts all of Plaintiff's arguments are "perfunctory and undeveloped" and thus "should be considered waived." (Doc. 12, at 7) (citing, *inter alia*, *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) ("[Issues] averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation and citation omitted); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.")). In *Kennedy*, Plaintiff "simply state[d] that she believe[d] that her surgeries [met] listing 1.13 of Appendix 1." 87 F. App'x 466. The Sixth Circuit found this insufficient and deemed the argument waived. *Id.*

Plaintiff's opening brief asserts error, but cites no regulations, case law, or rules in support. *See* Doc. 9. Further, it contains very minimal citations to the record. *See id.* Plaintiff submitted a reply brief, but did not provide any response to the Commissioner's waiver argument. *See* Doc.

10

13. Rather than base a recommendation on waiver, however, the undersigned will consider the merits of Plaintiff's underlying arguments.

Left Knee

Plaintiff contends the ALJ erred in his consideration of her left knee. Specifically, she contends the ALJ should have found her left knee impairment severe at Step Two (Doc. 9, at 2; Doc. 13, at 1). Further, she asserts the Appeals Council erred in failing to consider the later submitted evidence of her March 2016 MRI and office visit with Dr. Piston as supportive of limitations with her left knee. (Doc. 9, at 2-3) (citing Tr. 21-23). The Commissioner contends the ALJ's RFC assessment was supported by substantial evidence and properly accounted for Plaintiff's left knee impairment.

Preliminarily, the undersigned finds no harmful error in the ALJ's failure to identify Plaintiff's left knee impairment severe. Step Two (determining severe impairments) is a threshold inquiry and not a high hurdle for a claimant to clear: "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988); *see also Despins v. Comm'r of Soc. Sec.,* 257 F. App'x 923, 929 (6th Cir. 2007). It remains, however, that an ALJ's error in excluding an impairment as "severe" at step two is not harmful so long as the ALJ finds another severe impairment, continues with the five-step analysis, and accounts for all impairments, both severe and non-severe, at the subsequent analytical steps. *See, e.g.*, *Swartz v. Barnhart,* 188 F. App'x 361, 368 (6th Cir. 2006); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that [claimant] had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). Here, even if the ALJ erred in failing to identify Plaintiff's left knee

11

impairment as severe at Step Two, he found other severe impairments, and proceeded with the analysis. *See* Tr. 44.

In that analysis, the ALJ acknowledged Plaintiff's left knee treatment. *See* Tr. 47 ("In addition, she underwent left knee arthroscopy . . . on February 1, 2012"). He also noted Dr. Piston's June 2012 notation that Plaintiff's left knee continued to do well, but she had ongoing pain in her right knee. (Tr. 48) (citing Tr. 1414). Further, the ALJ considered and accounted for Dr. Piston's medical opinion in his RFC determination. *See* Tr. 51 (acknowledging and giving "great weight" Dr. Piston's July 2013 opinion that Plaintiff could do sedentary work, but her pain level required her to change sitting positions every twenty minutes) (citing Tr. 1220). Dr. Piston performed Plaintiff's left knee surgery, *see* Tr. 484, and continued to see Plaintiff in the intervening time period, see Tr. 517, 793-94, 824-25, 1218-20, 1414-15. So Dr. Piston was certainly aware of, and able to assess and incorporate any functional limitations Plaintiff had resulting from her left knee when he issued his opinion in July 2013. Further, the state agency reviewing physicians' opinions, offered in 2014, acknowledged left knee treatment in the record. *See* Tr. 106 (Dr. McKee's summary of the medical records included: "2/1/12: L knee arthroscopy with partial medial meniscectomy"; "5/1/14 . . . ROM of R knee is considerably restricted and flexion is more prominent on the L knee."); Tr. 123 (Dr. Lewis's review of the medical records included review of a July 2014 examination in which only right knee abnormalities were noted). Thus, all three physicians who offered opinions as to Plaintiff's functional capacity, and upon whom the ALJ relied, considered evidence of Plaintiff's left knee impairment. And all three opined that she could work in a sedentary capacity with some additional restrictions. *See* Tr. 109-10, 125-27, 1220.

Finally, Plaintiff asserts the Appeals Council erred in failing to consider the new evidence she submitted in the form of a March 2016 office visit and left knee MRI. (Doc. 9, at 3; Doc. 13,

12

at 2). The Commissioner responds that the additional evidence was not relevant as it did not relate the time period between Plaintiff's alleged onset date and date last insured. Moreover, the Commissioner contends, even if it were relevant, Plaintiff has not shown any evidence that her left knee impairment caused functional limitations beyond those found by the ALJ.

Plaintiff submitted this additional evidence to the Appeals Council. In denying review, the Appeals Council acknowledged it, and explained:

> The Administrative Law Judge decided your case through December 31, 2014. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 31, 2014.

(Tr. 2).

Initially, the undersigned notes that "[i]n order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Further, post-dated evidence is immaterial unless it relates back to the period under review. *See Pickard v. Comm'r*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002); *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value.").

When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner. *Casey v. Secy. of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993) (citing 20 C.F.R. § 404.955). Under such circumstances, a court reviewing the final decision of the Commissioner of Social Security is confined to a review of the administrative law judge's decision and the evidence presented to the administrative law judge. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003) (citing *Wyatt v. Sec'y of Health & Human Servs.,* 974 F.2d 680, 685 (6th Cir. 1992)). This Court

has no authority to review the decision of the Appeals Council. *See Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996) ("[T]he district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision."). Here, the Appeals Council declined review. (Tr. 2).

The Court, however, has independent jurisdiction under "sentence six" of Section 405(g) to remand for consideration of additional evidence. A remand pursuant to sentence six is appropriate "only if the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 276 (6th Cir. 2010); 42 U.S.C. § 405(g) ("The court may . . . at any time order additional evidence be taken . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."). Evidence is "new" if it did not exist at the time of the administrative proceeding and "material" if there is a reasonable probability that a different result would have been reached if introduced during the original proceeding. *Ferguson*, 628 F.3d at 276. This standard also applies to evidence submitted for the first time to the Appeals Council. *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001); *Cline*, 96 F.3d at 148. The burden is on Plaintiff to show the evidence is new, material, and there is good cause for failure to submit earlier. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

Even assuming Plaintiff is requesting a Sentence Six remand[3], Plaintiff has not met her burden of establishing such an order would be appropriate because she has not established the evidence is "material." Evidence is "material" if there is a "reasonable probability that the

---

3. Neither of Plaintiff's briefs specify the type of relief requested. *See* Docs. 9, 13.

14

Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357 (quoting *Sizemore*, 865 F.2d at 711).

Plaintiff has not shown the evidence submitted to be material. The new evidence consists of an office visit and MRI dated over a year after the expiration of Plaintiff's insured status. *See* Tr. 21-22, 24-28. Such later dated evidence is "minimally probative" of Plaintiff's condition at the time her insured status expired. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (report from eight months after expiration of insured status); *see also Strong*, 88 F. App'x at 845 ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."). Plaintiff has also not shown how this additional evidence would have caused the ALJ to reach a different disposition of her disability claim. *See Ferguson*, 628 F.3d at 276. Although Plaintiff argues the "moderate degeneration" shown by the MRI is "by its nature . . . not something that just 'shows up'" (Doc. 13, at 2), Plaintiff has not shown anything that suggests these additional records would change the functional limitations in her RFC, which already provided for a limited range of sedentary work. There were not significant, ongoing complaints of left knee problems during the relevant time period. It is Plaintiff's burden to demonstrate the evidence is material, and she has not done so. *See Sizemore*, 865 F.2d at 911; *see also* 20 C.F.R. § 404.1512(c) (Plaintiff's burden to prove disability).[4]

For the reasons stated above, the undersigned therefore recommends the court find no error in the ALJ's consideration of Plaintiff's left knee impairment.

---

4. Notably, at the March 2016 office visit Plaintiff points to in support of her argument, Dr. Piston recommended Plaintiff "attend physical therapy once a week *with no physical therapy needed on the left knee*." (Tr. 28) (emphasis added).

Dr. Kaplan's Opinion / Standing Limitations

Plaintiff next contends the ALJ erred with regard to Dr. Kaplan's opinion. Specifically, Plaintiff argues: "[o]n the bottom of page 51 of the transcript, the Judge expressly gives weight to the report as to the sedentary limitations. If weight had been given as suggested, the claimant would have been adjudicated disabled. This is legal error." (Doc. 9, at 3). The Commissioner contends the ALJ properly considered Dr. Kaplan's opinion and his decision is supported by substantial evidence. The undersigned agrees with the Commissioner.

The ALJ summarized and addressed Dr. Kaplan's opinion as follows:

Richard Kaplan, M.D., performed an independent medical examination of the claimant related to worker's compensation on September 18, 2014. He noted that the claimant had no upper extremity symptoms. She used a cane daily and her son helped with cleaning the house. She had severe tenderness diffusely in the right knee on examination. He described her gait as mildly antalgic with a straight cane and orthosis. She had extremely limited range of motion in the right knee. Dr. Kaplan opined that she reached maximum medical improvement and further curative treatment was not likely to be effective. He opined that she could stand or walk for 15 minutes continuously or 1 hour cumulatively per day, lift/carry 5 pounds frequently or 10 pounds occasionally. She could not kneel, squat, bend, twist, climb or work at heights and she could sit on an unrestricted basis with the ability to change positions for 1 minute every hour.

* * *

I give some weight to Dr. Kaplan's opinion to the extent he assessed a range of sedentary exertion, although his opinion regarding the claimant reaching MMI is relative to workers' compensation.

(Tr. 50, 51).

The ALJ explained he was only assigning "some weight" to Dr. Kaplan's opinion "to the extent he assessed a range of sedentary exertion." (Tr. 51). Dr. Kaplan opined Plaintiff could lift five pounds frequently or ten pounds occasionally, which is consistent with the definition of sedentary work. *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."). Next, the ALJ's RFC was consistent with (and in fact seemingly more restrictive than)

16

Dr. Kaplan's opinion that Plaintiff could "sit on an unrestricted basis with the ability to change positions for 1 minute each hour." (Tr. 1682). The ALJ's RFC permitted Plaintiff to "change positions between sitting and standing 3 times per hour being momentarily off task while doing so". (Tr. 46). Further, Dr. Kaplan's opinion that Plaintiff could "sit on an unrestricted basis" is consistent with the definition of sedentary work. *See* SSR 96-9p, 1996 WL 374185, at *6 ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch break, and an afternoon break at approximately 2-hour intervals.").

Plaintiff seemingly objects to the ALJ's implicit decision not to credit Dr. Kaplan's opinion that Plaintiff could "stand or walk for 15 minutes continuously or 1 hour cumulatively per day." (Tr. 1682). Plaintiff is correct that this finding is incompatible with the ALJ's finding that Plaintiff could perform a range of sedentary work (Tr. 46), which includes the ability to stand or walk for two hours in an eight-hour workday, SSR 96-9p, 1996 WL 374185, at *3 ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 'Occasionally' means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday."). Again, however, the ALJ stated he gave Dr. Kaplan's opinion only "some" weight, "to the extent he assessed a range of sedentary exertion." (Tr. 51). That is, he only gave weight to the portion of the opinion consistent with sedentary work. His standing restrictions were not consistent. The ALJ's decision in this regard is further supported by the opinions of the state agency reviewing physicians who both opined Plaintiff could stand or walk for four hours in an eight-hour workday. (Tr. 109, 125). The ALJ is tasked with determining a Plaintiff's residual functional capacity based on record as a whole. 20 C.F.R. § 404.1546(c); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act

17

instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). The ALJ reasonably considered the medical opinion evidence of record—including Dr. Kaplan's opinion—in formulating the RFC, and that RFC is supported by substantial evidence. As such, the undersigned recommends the court reject Plaintiff's claim of error as to Dr. Kaplan.

VE Testimony

Lastly, Plaintiff argues the ALJ's questioning of the VE was "vague" to the extent it did not clarify the word "momentarily" and because "[t]here was no discussion regarding 3x an hour". (Doc. 9, at 3). The Commissioner responds that there was no error, and the undersigned agrees. The ALJ asked the VE to:

> Assume a hypothetical individual of the Claimant's age, education and background and with the past jobs you've described. Further assume this individual is limited to a range of sedentary work with the following additional limitations: this person would be able to change positions between sitting and standing three times per hour, being momentarily off task while doing so; this person could occasionally climb ramps and stairs, no ladders and scaffolds; occasionally balance; frequent stoop; occasional kneel; occasional crouch; no crawling; no unprotected heights; no moving mechanical parts; occasional operating the motor vehicle.

(Tr. 95-96). The VE responded that jobs such as touch-up screener, patcher, and document preparer would be available. (Tr. 96). The ALJ then added a limitation to "simple, routine tasks." (Tr. 96). The VE responded that such an individual would be able to perform jobs such as document preparer, table worker, and touch-up screener. (Tr. 97). When asked for clarification, the VE testified that all of these jobs could be performed sitting or standing. *Id.* The VE also testified that an individual can be off task for "up to nine minutes or 15 percent of any day or any hour or day" and still maintain competitive employment. *Id.*

Although Plaintiff asserts the ALJ's use of the word "momentarily" was vague, neither the VE nor Plaintiff's counsel at the hearing objected to the term, or asked for clarification. *See* Tr. 95-98. Thus, there was nothing to suggest the limits posed in the hypothetical were unclear to

18

either the VE or counsel. Plaintiff's counsel asked the VE a hypothetical question, incorporating the ALJ's prior question and adding: "an additional requirement as part of this hypothetical persons' job profile that they would have to elevate their leg waist level or higher for at least half the work day". (Tr. 98). The VE testified that such a requirement would require an accommodation from an employer. *Id.* Counsel did not ask for clarification about the word "momentarily" or any further explanation of the requirement that Plaintiff be permitted to shift position three times per hour. Plaintiff thus cannot complain about the vagueness of the terms at this stage. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) ("[C]ounsel may not now complain because he failed to cross-examine [the medical expert] when he had the opportunity to do so[.]"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ("We now hold that, at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal.").[5] To hold otherwise would create a perverse incentive for claimants to avoid clarification at the ALJ hearing in order to preserve arguments on appeal. Thus, consistent with other courts that have analyzed this issue, the undersigned recommends the court find the ALJ did not err. *See Justus v. Astrue*, 2013 WL 503137 (S.D. Ohio) (noting that "the VE expressed no difficulty understanding and applying these limitations in connection with his identification of compatible employment" and "[i]f Plaintiff's

---

5. This rationale is analogous to the Sixth Circuit's holdings regarding conflicts between VE testimony and the definitions in the Dictionary of Occupational Titles ("DOT"). In those cases, the Sixth Circuit has held the ALJ is "under no obligation to investigate the accuracy of the VE's testimony" that his opinion is consistent with the DOT definitions because "[t]he obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x at 168, 168-69 (6th Cir. 2009) (citing *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008)). Similarly here, the "obligation falls to plaintiff's counsel" to clarify any allegedly ambiguous terms in the hypothetical question at the hearing.

counsel found the ALJ's terminology to lack clarity, he was afforded an opportunity to ask the ALJ to clarify at the administrative hearing, but did not do so"), *report and recommendation adopted by* 2013 WL 941336; *see also Campusano v. Berryhill*, 2018 WL 1566332, at *3 (W.D.N.C.) ("[T]he VE expressed no confusion as to what 'casual, non-intense contact' meant for plaintiff, and plaintiff did not object to the question posed in those terms at her hearing."); *White v. Berryhill*, 2013 WL 4026921, at *3 (D. Md. 2013) (rejecting argument that ALJ erred in not further defining a functional limitation in a hypothetical because claimant did not object to the question at the hearing and the VE did not indicate confusion about its meaning).

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB supported by substantial evidence and recommends the decision be affirmed.

      s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).